**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD.,<br><br>    Plaintiff,<br><br> v.<br><br>ERICSSON, INC.,<br>AMAZON WEB SERVICES, INC., and<br>VADATA, INC.,<br><br>    Defendant. | The Honorable Robert W. Schroeder, III<br><br>Civil Action No. 2:16-CV-00618-RWS |

**REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TRANSFER CLAIMS AGAINST AMAZON WEB SERVICES, INC. AND
VADATA, INC. UNDER THE FIRST-TO-FILE RULE AND TO STAY CLAIMS
AGAINST CUSTOMER DEFENDANT ERICSSON, INC. PENDING RESOLUTION
<u>OF THE FIRST-FILED ACTION IN THE EASTERN DISTRICT OF VIRGINIA</u>**

J. David Hadden
CA Bar No. 176148 (Admitted E.D. Tex.)
dhadden@fenwick.com
Saina S. Shamilov
CA Bar No. 215636 (Admitted E.D. Tex.)
sshamilov@fenwick.com
Ravi Ranganath
CA Bar No. 272981 (Admitted E. D. Tex.)
rranganath@fenwick.com

FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

*Counsel for Defendants*
AMAZON WEB SERVICES, INC., and
VADATA, INC.

## INTRODUCTION

This case is nearly indistinguishable from the facts in *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (hereafter, "*Google*"), in which the Federal Circuit issued a writ of mandamus directing a court in this district to stay patent infringement claims against customers pending resolution of declaratory judgment claims brought by the supplier of the accused technology. (*See* Dkt. No. 10 (Mot.) at 17-18.) GEMSA ignores the case, and instead parrots the same arguments the *Google* court rejected.

The Federal Circuit in that case was not persuaded by the same arguments GEMSA makes here: that (1) the customer cases in the Eastern District of Texas were entitled to deference under the first-to-file rule (Reply Declaration of Ravi Ranganath ("Ranganath Reply Decl."), Ex. A (Rockstar Responsive Brief) at 13); (2) their suits in Texas were not true "customer suit(s)" because each customer was not "simply a reseller" (*id.* at 17); (3) evidence relating to the contacts of a single customer—Samsung—with the state of Texas supported venue in the Eastern District (*id.* at 26); (4) resolving all of the customer cases simultaneously in Texas would promote judicial economy (*id.* at 29); and (5) any stay is improper because the customers had not agreed to be bound by the judgment in Google's declaratory judgment action (*id.* at 18). Rejecting each of these arguments, the Federal Circuit concluded the facts "present[ed] a classic case for a stay" and that any other outcome would "produc[e] wasteful and unnecessary litigation." *Google*, 588 F. App'x at 990. The facts here are no different, and the Court should reach the same result. Amazon's declaratory judgment claims must go forward and GEMSA's more than 30 customer suits must be stayed.

## ARGUMENT

I. **AMAZON'S DECLARATORY JUDGMENT ACTION IS THE FIRST-FILED ACTION UNDER THE FIRST-TO-FILE RULE.**

GEMSA wrongly contends that the Texas cases against the more than 30 Amazon customers were first-filed because they were filed before Amazon's declaratory judgment complaint in the Eastern District of Virginia. As the Federal Circuit has held, first-filed *customer* suits are

not entitled to deference under the first-to-file rule.

*Google* makes that clear. There, patentees Rockstar Consortium U.S. LP and Mobilestar Technologies, LLC (collectively, "Rockstar") (like GEMSA) filed several lawsuits in the Eastern District of Texas against customers—users of Google's Android operating system—and Google (like Amazon) filed a declaratory judgment action in another jurisdiction to defend its customers and technology. *Google*, 588 F. App'x at 989. In briefing before the Federal Circuit, Rockstar made the same argument GEMSA now asserts:

> Samsung and Google proceed under the misrepresentation that the suit filed by Google in California is "the first-filed action regarding the same patents" at issue in this case. That is simply not true. The NDCA action was filed two months *after*, and expressly in response to, this first-filed action regarding the same patents (and some of the same products) in Texas.

(*See* Ranganath Reply Decl., Ex. A at 14 (citation omitted).) The Federal Circuit dismissed that argument, in terms that apply with equal force here:

> We are also unpersuaded by Respondents' argument that, despite not initially naming Google as a defendant, their actions are entitled to precedence under a first-filed designation since their complaints in Texas were filed before the California action, because, as the Supreme Court noted in rejecting a similar argument in *Kerotest Manufacturing*, "the equities of the situation do not depend on this argument."

*Google*, 588 F. App'x at 990 n.2 (citation omitted).

GEMSA erroneously relies on the Supreme Court's opinion in *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, issued more than 60 years ago, without noting its key distinction: that the case involved just one customer case. 342 U.S. 180 (1952). There, patentee C-O-Two sued a single customer of Kerotest in the Northern District of Illinois alleging infringement through the making, selling, and use of a device supplied by Kerotest. *Id.* at 181. Kerotest filed an action in the District of Delaware for declaratory judgment of non-infringement and invalidity of the C-O-Two patents. *Id.* C-O-Two subsequently added Kerotest to its lawsuit in the Northern District of Illinois. *Id.* at 182. The District of Delaware entered an injunction preventing C-O-Two from pursuing its lawsuit in the Northern District of Illinois and denied C-O-Two's motion to stay in

2

that court. *Id.* The Third Circuit reversed, noting that the single customer could not be added as a party to Kerotest's declaratory judgment claim, whereas all parties could resolve their claims once and for all in Illinois. *Id.* at 183. The Supreme Court affirmed, noting the "ample degree of discretion" involved in such cases, and finding no reason to "displace" the judgment of the Third Circuit for its own. *Id.* at 184.

*Kerotest* cannot save GEMSA here: The *Kerotest* patentee sued only *one* customer; GEMSA has sued more than 30. Whereas Kerotest could have defended its technology efficiently in a single case, Amazon cannot. Both *Google* and *Kerotest* (which the Federal Circuit cites in *Google*) are consistent with the principle that the first-to-file rule should not be applied rigidly, but should be applied with an eye toward judicial efficiency. *See Kerotest*, 342 U.S. at 183 ("Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems.") And the Federal Circuit made clear in *Google* that it was more efficient to proceed in a single declaratory judgment case rather than to have five separate customer suits and a declaratory judgment action in different jurisdictions.[1] *Google*, 588 F. App'x at 990. Here, efficiency dictates that Amazon's Virginia action proceed, that GEMSA's claims in this district against Amazon in its numerous customer cases be dismissed or transferred, and that GEMSA's claims against Amazon's customers be stayed.[2]

---

[1] Consistent with the logic of the Federal Circuit in *Google*, other courts have declined to give patentees the benefit of first-filed status where they intentionally sue the wrong party. *See Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 131 & n.7 (S.D.N.Y. 2003) (where patentee sued distributor of accused laminate flooring and later sought to add manufacturer to case after manufacturer filed declaratory judgment complaint, court found amendment did not relate back and transferred to jurisdiction of manufacturer's first-filed declaratory judgment complaint); *see also Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010) (making deliberate choice to sue wrong parties "while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity").

[2] Though not material to this motion, GEMSA contends that Amazon failed to establish a sufficient case or controversy exists to support its declaratory judgment claims in Virginia. (Opp. at 8.) It asserts that Amazon cannot bring a claim for declaratory judgment merely because GEMSA sues Amazon customers for direct infringement. But here, not only did GEMSA's complaints *explicitly* accuse Amazon technology of infringement (when "accessed" by its

3

## II. THE EASTERN DISTRICT OF VIRGINIA IS THE PROPER VENUE FOR THIS LAWSUIT.

Amazon's claims in Virginia are the first-filed claims with respect to Amazon and GEMSA's dispute. Thus, the Court should defer to that venue. And venue is proper in Virginia because Congress designated the Eastern District of Virginia as the proper venue for asserting claims against non-resident patentees such as GEMSA who have not designated an agent for service of process. *See* 35 U.S.C. § 293. Nevertheless, the Court can consider convenience factors under 28 U.S.C. § 1404(a) if it declines to defer to Amazon's first-filed action. *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (stating that departure from the first-to-file rule is permitted when "judicial and litigant economy, and the just and effective disposition of disputes, require otherwise"). If the Court does consider the convenience factors, they favor venue in Virginia overwhelmingly.[3]

None of the relevant parties has any conceivable connection to this district. First, of the 20 customers sued in the second wave of cases, only Ericsson is alleged to have any presence in this district, and in any event any allegations regarding Amazon's customers' connections to Texas are irrelevant. The *Google* court rejected Rockstar's argument that the contacts of a *customer*, Samsung, in the Eastern District of Texas supported venue there. (Ranganath Reply Decl., Ex. A at 3-4 (arguing that customer Samsung "has its U.S. headquarters and develops the accused devices . . . in the EDTX").) The court found this argument unpersuasive and instead focused on the location of evidence and witnesses related to Google, the true target of Rockstar's infringement allegations. *See* 588 F. App'x at 990 (noting that Rockstar had provided "nearly identical infringement contentions to all defendants that rely almost exclusively on the underlying functionalities provided in the base Android source code provided by Google" and therefore

---

customers), but in response to Amazon's declaratory judgment action, GEMSA actually sued Amazon. These constitute "affirmative acts" by a patentee that give rise to declaratory judgment jurisdiction. *SanDisk v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007); *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011).

[3] Contrary to GEMSA's assertion, Amazon did address convenience factors in its opening brief and therefore did not waive the right to address this issue here. (*See* Mot. at 16-17.)

4

finding convenience favored the Northern District of California, where "Google's Android products, the target of this infringement action, were designed and created"). As in *Google*, GEMSA's infringement allegations do not implicate any technology of Ericsson, or any of the customer defendants, and are instead based solely on use of Amazon technology. Thus, no witnesses or evidence from Ericsson, or any customer defendant, are likely to be relevant.

Second, GEMSA does not dispute that it is an Australian company with a principal place of business in Warradale, South Australia and with no employees or operations in Texas. (Dkt. No. 8 ¶ 1.)[4] Amazon similarly has no facilities in this district. In contrast, Amazon has strong connections to Virginia; that is where Amazon maintains offices and data centers that provide and support the accused technology. As the majority of relevant evidence in patent infringement suits usually comes from the accused infringer, the ease of accessing the defendant's sources of proof weighs in favor of a transfer to that location. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Amazon's offices and data centers in Virginia employ a large number of people, including employee witnesses who may have knowledge relevant to the issues in this case. (*See* Dkt. No. 10-9 (Ex. H to Ranganath Decl.) at ¶ 9.) Thus, the ease of access of proof and convenience and availability of witnesses favor venue in Virginia.

Similarly, several potentially important prior art witnesses are located on the east coast, making the Eastern District of Virginia a more convenient venue for those valuable third-party witnesses. *See Uniloc USA, Inc. v. Distinctive Dev. Ltd.*, 964 F. Supp. 2d 638, 647-48 (E.D. Tex. 2013) (taking patent prior art witnesses into consideration when evaluating a transfer under

---

[4] GEMSA relies heavily on the purported fact that "the inventors, the assignee, and the prosecuting attorney are in the Houston area," as are witnesses with unspecified knowledge of Flash VOS, an embodiment of the '400 and '677 patents, and vague documents relating to the prosecution of those patents. (*See* Opp. at 14.) Not only are these witnesses and evidence of questionable relevance to this case, but GEMSA cites only to the face of the patents and/or its witness list (Dkt. No. 13-2 (Ex. 1 to Ramey Decl.)), which are not evidence of where these individuals actually reside today. In fact, at least one of the two inventors of the asserted patents, Schumann Rafizadeh, is an officer of GEMSA and is based in Australia, not Texas. (*See* Dkt. No. 10-12 (Ex. K to Ranganath Decl.) (LinkedIn Profile).)

5

§ 1404(a)). Specifically, two of the named inventors for United States Patent No. 6,324,627, a prior art reference cited on the face of the '677 patent, are located in New York and New Jersey, and the original assignee of the patent, Virtual Data Security, LLC, was based in New York. (Ranganath Reply Decl., Ex. B.) Stephen G. Eick, named inventor of U.S. Patent No. 5,945,998, a prior art reference cited on the face of the '400 patent, is located in Naperville, Illinois, and the original assignee of the patent, Lucent, was based in New Jersey. (*Id.*, Ex. C.) IBM, assignee of some prior art patents and applications, is based in New York. (*See, e.g., id.*, Ex. D.) Thus, the Eastern District of Virginia is a more convenient venue for these third parties. Finally, no other practical considerations support venue in this district.[5] This case plainly belongs in Virginia.

### III. GEMSA'S MORE THAN THIRTY CUSTOMER CASES MUST BE STAYED UNDER THE CUSTOMER SUIT DOCTRINE PENDING RESOLUTION OF AMAZON'S DECLARATORY JUDGMENT ACTION.

Regardless of which case is first-filed, Federal Circuit law and principles of judicial efficiency require that wasteful and duplicative customer suits—such as the over 30 cases filed in this district—be stayed pending resolution of claims between the patentee and the true defendant, *i.e.* Amazon's declaratory judgment action in Virginia.

#### A. This Case Falls Squarely Within the Customer Suit Doctrine.

GEMSA contends that the customer suit exception to the first-to-file rule does not apply because Amazon's customers are not "mere resellers" of Amazon technology. (Opp. at 5.) The Federal Circuit in *Google* rejected this very same argument. There, patentee Rockstar asserted that the customer suit exception was barred because the "[customer defendant] Samsung is not 'simply a reseller' of its accused mobile devices [because] it manufactures those devices [and] Google manufactures none of the accused hardware, which is an element of the patents-in-suit." (Ranganath Reply Decl., Ex. A at 16-19.) The Federal Circuit rejected Rockstar's argument, finding that regardless of whether Samsung was a reseller of Google technology, the customer

---

[5] Contrary to GEMSA's claim that "trial is set in this action in less than a year and a transfer would cause delay" (Opp. at 18), no scheduling or consolidation order has been entered in this case and no trial date has been set.

suit must be stayed. *Google*, 588 F. App'x at 990-91. The two suits were "so closely related that substantial savings of litigation resources [could] be expected [and] it [was] clear that staying proceedings in Texas [would] likely further these objectives by mooting or at least advancing the 'major premises' being litigated in the Texas actions." *Id.* at 991 (quoting *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)). Similarly, in *In re Nintendo of America, Inc.*, the Federal Circuit ordered retailer defendants cases stayed because "the issues of infringement and validity are common to Nintendo and the Retailer Defendants," and resolution of Nintendo's case would necessarily resolve the retailer defendants' cases as well. 756 F.3d 1363 1366 (Fed. Cir. 2014) (citation omitted).

Indeed, courts routinely stay cases brought against users of software pending resolution of claims between the patentee and the producer of the software, even where the end users are not "resellers" or have to take some action as part of the alleged infringement. *See Select Retrieval, LLC v. ABT Elecs.*, No. 11 C 03752, 2013 WL 657861, *1, *5 (N.D. Ill. Dec. 13, 2013) (staying claims against end-users of Adobe digital marketing software that enabled search functionalities in online stores); *Pragmatus Telecom, LLC v. Advanced Store Co.*, No. 12–088–RGA, 2012 WL 2803695, at *3-4 (D. Del. July 10, 2012) (similar). In any event, GEMSA's infringement allegations in its complaint do not encompass anything more than Amazon technology, and are not based on anything Amazon customers provide. (*See* Dkt. No. 8 ¶ 6 (alleging infringement through "access[]" of "websites, data, data centers and the like owned or controlled by Amazon").)[6] And the infringement contention claim charts GEMSA served in its first wave of its cases likewise identify Amazon technology as purportedly meeting each and every limitation of its patents. (*See* Mot. at 4-7.) Thus, the resolution of Amazon's declaratory judgment claims in Virginia will resolve the "major issues"—if not every issue in GEMSA's customer cases. In-

---

[6] GEMSA points to a diagram from a case study on the AWS webpage that shows the architecture of the Ericsson website (Opp. at 6), but does not identify any particular aspect of that architecture that is accused, let alone any technology specific to Ericsson.

deed, few cases could conceivably involve the customer suit exception more than this one.[7] *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011).

### B. Dismissal or Transfer of Texas Claims Against Amazon and a Stay of the Claims Against Ericsson Serves the Guiding Principles of Efficiency and Judicial Economy.

GEMSA contends that transfer would "result[] in duplicative actions that waste judicial resources"—in other words, it argues that litigating more than 30 cases in this district could somehow be more efficient than litigating a single case in Virginia.[8] (Opp. at 7.) That assertion makes no sense. The very point of Amazon's Virginia declaratory judgment suit is to avoid duplicative action. *See Google*, 588 F. App'x at 990-91 (noting that "there was no need to proceed with the five Texas actions because the one California action may suffice" and finding it irrelevant that consolidating all actions in Texas might be "easier" because "[t]hat reasoning simply ignores the justifications for a stay and cannot . . . sustain the obvious waste of resources inherent in allowing both actions to proceed in parallel fashion"). Amazon has over a *million* customers of its web services, and GEMSA has so far selectively chosen to sue just a few dozen. Resolution of the single Virginia action will necessarily moot litigation not only of the over 30 pending customer suits here (and those likely to be transferred to other districts), but also of potentially

---

[7] The cases relied on by GEMSA are not persuasive because courts found that resolution of the manufacturer suits in those instances would not resolve the major issues in the customer suits. In *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, 2:13-cv-909-JRG, 2015 U.S. Dist. LEXIS 675, at *12-13 (E.D. Tex. Jan. 6, 2015), the court held that because Vantage Point alleged direct infringement through customers' testing and other use of the supplied chipsets, a finding that the chipset itself could be used in infringement did not resolve the question of the customer's infringing acts. By contrast, GEMSA's amended complaint accuses Amazon's web services of directly infringing the asserted patents and has mapped each and every claim element to acts and technology of Amazon. (Dkt. No. 8 at ¶ 6.) In *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-00061-JRG, 2014 U.S. Dist. LEXIS 51676, at *14 (E.D. Tex. Apr. 15, 2014), the resolution of the manufacturer suit would not have resolved the customer suits because the customer defendants' use of other supplier hardware was at issue in those suits. But in this case, and the more than 30 other cases against Amazon customers in this district, only *Amazon* technology is at issue. Thus, resolving Amazon and GEMSA's dispute in Virginia will resolve GEMSA's claims against all Amazon customers.

[8] Similarly, in *Google* Rockstar argued that judicial efficiency would be served by consolidation of its customer cases for pre-trial purposes. (Ranganath Reply Decl., Ex. A at 29.)

8

hundreds if not thousands of future suits against Amazon customers.

GEMSA also overplays the argument that efficiency is served by denying a stay because there are other "providers of cloud computing services." (Opp. at 8.) As an initial matter, GEMSA identifies only *three* of its 35 customer cases that involve anything other than Amazon accused technology—that is not a reason to have over 30 trials in this district, particularly when Amazon's single declaratory judgment action will resolve all issues in these customer cases. Moreover, this Court has held when considering "judicial efficiency" under 28 U.S.C. § 1404 that a plaintiff may not "manufacture venue" by filing multiple lawsuits in a single district, and that it "will not permit the existence of separately filed cases to sway its transfer analysis." *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013). The same logic applies here. GEMSA's actions against Alibaba, E-Bay, and Booking.com are irrelevant for the purposes of considering this motion. GEMSA's identification of other "'warehouse' services providers" such as Google, HP, IBM, and Microsoft is irrelevant because GEMSA has sued neither those providers nor customers of those providers. (Opp. at 8.)

Finally, GEMSA's assertion that Amazon should have intervened in over 30 different lawsuits rather than filing a single declaratory judgment suit calls for the antithesis of efficiency.[9] (Opp. at 10.) Indeed, the Federal Circuit in *Nintendo* vacated this Court's order denying a mo-

---

[9] GEMSA's reliance on dicta in *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014) is misplaced. As an initial matter, that case concerned subject matter jurisdiction for declaratory judgment claims, and did not involve either the application of the first-to-file rule or the customer suit exception. In that case, the Federal Circuit found that a customer's request for indemnification, without more, does not give rise to subject matter jurisdiction for a declaratory judgment action. *Id.* at 904. In dicta, the Federal Circuit commented that a supplier cannot file a declaratory judgment action in another jurisdiction to indemnify a customer who has already been sued elsewhere. *Id.* These facts have no application here. Here, GEMSA's infringement allegations accuse Amazon's technology of performing the patents' claims and squarely implicate all end-users of the accused Amazon technology, not just certain parties who have requested indemnity. Indeed, the *DataTern* court found that when infringement allegations implicate the supplier's technology, the supplier has standing to file declaratory judgment claims and the court *allowed* some of Microsoft and SAP's declaratory judgment claims in the Southern District of New York to proceed in that forum, despite the fact that DataTern had sued customers of those suppliers in the Eastern District of Texas. *Id.* at 911.

9

tion to sever, transfer, and stay the retailer cases because resolving Nintendo's single case first in Washington addressing the same issues, would dispose of the retailer cases there, and thus resolve all "claims more efficiently and conveniently." *Nintendo*, 756 F.3d at 1366. The same reasoning applies to staying the claims against Amazon's numerous customer defendants, including Ericsson, while the Virginia court resolves Amazon's declaratory judgment claims.

### C. Amazon's Declaratory Judgment Action Will Fully Resolve Amazon and GEMSA's Claims, Regardless of Whether the Customers Agree to Be Bound.

Contrary to GEMSA's contention, whether Amazon's customers have agreed to be bound by the result of Amazon's declaratory judgment claims (and GEMSA's anticipated counterclaims for infringement) is irrelevant to the efficiency of a stay. (Opp. at 10.) If Amazon wins a judgment of non-infringement in the Virginia action, GEMSA cannot prove infringement by Amazon customers. And if Amazon succeeds on its invalidity claims, GEMSA will have no patents to assert in the customer cases. If, on the other hand, GEMSA prevails on its anticipated infringement counterclaims, it will win a damages award from *Amazon* and would be unable to recover in any subsequent action against Amazon's customers based solely on their use of Amazon's technology—which is what GEMSA alleges in this district. *See Shifferaw v. Emson USA*, 2:09–CV–54–TJW–CE, 2010 WL 1064380, *3 (E.D. Tex. Mar. 18, 2010) (plaintiff cannot receive a double recovery of damages from sales by retailers and manufacturers); *LG Elecs., Inc. v. Asustek Comps.*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000) ("If the court does find them liable, and allows LGE to collect royalties from Asustek and Asus, LGE cannot then in turn collect royalties from the entity to whom the infringer sells the product."). Thus, whether Amazon's customers agree to be bound or not, GEMSA's customer claims will be resolved once Amazon's declaratory judgment action is resolved. GEMSA's customer claims should be stayed.

### CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant its motion to dismiss or transfer claims against it under the first-to-file rule and its motion to stay claims against its customers in this district.

Dated: September 1, 2016

Respectfully submitted,

*/s/ J. David Hadden*
J. David Hadden, CSB No. 176148
Email: dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
Email: sshamilov@fenwick.com
Ravi Ranganath, CSB No. 272981
Email: rranganath@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:     650.938.5200

*Counsel for Defendants*
AMAZON WEB SERVICES, INC., and
VADATA, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5(a)(3) on September 1, 2016.

*/s/ J. David Hadden*
J. David Hadden