**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD., <br><br>                   Plaintiff, <br><br><br>         v. <br><br> ERICSSON, INC., <br> AMAZON WEB SERVICES, INC., and <br> VADATA, INC. <br><br>               Defendants. | Case No. 2:16-cv-00618-RWS-RSP |

## <u>MEMORANDUM ORDER</u>

Before the Court is Defendant Amazon Web Services, Inc., and VADATA, Inc. ("Amazon")'s Motion to Dismiss or, in the Alternative, Transfer Claims Against Amazon Under The First-to-File Rule and to Stay Claims Against Customer Defendant Ericsson, Inc. Pending Resolution of the First-Filed Action in the Eastern District of Virginia (Dkt. No. 10) ("Amazon's Motion"), as well as Defendant Ericsson Inc. ("Ericsson")'s Motion to Stay and Joinder in Amazon's Motion to Stay (Dkt. No. 16) ("Ericsson's Motion"). For the following reasons, the Court hereby **GRANTS** Amazon's Motion and Ericsson's Motion, as more specifically set forth in the accompanying Order.

## I.    BACKGROUND

### A.    GEMSA Suits

Plaintiff Global Equity Management (SA) Pty. Ltd. ("GEMSA") filed 37 patent lawsuits (of which 34 are currently pending and 3 have been closed) with this Court in five main phases:

**(1) First,** on **October 30, 2015**, GEMSA filed five (5) patent lawsuits:

(i) *GEMSA v. AirBNB, Inc.,* 2:15-cv-1700

(ii) *GEMSA v. Alibaba.com, Inc. et al,* 2:15-cv-1702

(iii) *GEMSA v. PriceLine Group, Inc., Booking.com,* 2:15-cv-1703

(iv) *GEMSA v. PriceLine Group, Inc., Kayak, Inc.,* 2:15-cv-1704 (closed 1/26/16)

(v) *GEMSA v. PriceLine Group, Inc., Priceline.com,* 2:15-cv-1705 (closed 1/26/16)

**(2) Second,** on **January 29, 2016**, GEMSA filed ten (10) more patent lawsuits:

(i) *GEMSA v. Expedia, Inc.,* 2:16-cv-95

(ii) *GEMSA v. Hotels.com, L.P. et al,* 2:16-cv-96

(iii) *GEMSA v. CruiseShipCenters, L.P. et al,* 2:16-cv-97

(iv) *GEMSA v. eBay, Inc.,* 2:16-cv-98

(v) *GEMSA v. Travelocity USA,* 2:16-cv-99

(vi) *GEMSA v. Expedia Inc, Travago GmbH,* 2:16-cv-100

(vii) *GEMSA v. Expedia Inc, Orbitz Worldwide, Inc.,* 2:16-cv-101

(viii) *GEMSA v. Expedia Inc, Hotwire Inc,* 2:16-cv-102

(ix) *GEMSA v. TripAdvisor LLC,* 2:16-cv-103

(x) *GEMSA v. Hipmunk, Inc.,* 2:16-cv-104 (closed 8/10/16)

On **April 6, 2016**, thirteen (13) of the above lawsuits, specifically the three cases 2:15-cv-1700, -1702, -1703 and the ten cases of 2:16-cv-95, -96, -97, -98, -99, -100, -101, -102, -103 and -104 were consolidated under the single lead case of 2:16-cv-95. (*See* Dkt. No. 9 in 2:16-cv-95).

The consolidation orders in cases 2:16-cv-104, -1700, -1702, -1703 were posted **May 4, 2016**. (*See, e.g.,* Dkt. No. 46 of 2:16-cv-1700). No consolidation orders were posted in the cases of 2:16-cv-1704 and -1705 because those cases were closed on January 26, 2016, as noted above.

**(3) Third,** on **June 14, 2016**, GEMSA filed twenty (20) more patent lawsuits:

(i) *GEMSA v. Ericsson, Inc.,* 2:16-cv-618

(ii) *GEMSA v. Johnson & Johnson USA, Inc.,* 2:16-cv-619

(iii) *GEMSA v. Philips, Inc.,* 2:16-cv-620

(iv) *GEMSA v. SAP America, Inc.,* 2:16-cv-621

(v) *GEMSA v. Siemens Corporation,* 2:16-cv-622

(vi) *GEMSA v. The Nasdaq OMX Group, Inc. et al,* 2:16-cv-623

(vii) *GEMSA v. Ticketleap.com, LLC et al,* 2:16-cv-624

(viii) *GEMSA v. Live Nation Entm't, Inc. (d/b/a Ticketmaster, Inc.),* 2:16-cv-625

(xi) *GEMSA v. Ubisoft Studio, Inc. (d/b/a Ubisoft),* 2:16-cv-626

(x) *GEMSA v. General Electric Company,* 2:16-cv-627

(xi) *GEMSA v. McGraw Hill Fin., Inc. (d/b/a S&P Global and S&P Capital IQ),* 2:16-cv-628

(xii) *GEMSA v. Zynga, Inc.,* 2:16-cv-629

(xiii) *GEMSA v. Alcatel-Lucent, Inc.,* 2:16-cv-630

(xiv) *GEMSA v. Uber Technologies, Inc.,* 2:16-cv-631

(xv) *GEMSA v. Artek Surfin Chemicals, Ltd. (d/b/a Galata Chemicals, LLC),* 2:16-cv-632

(xvi) *GEMSA v. Netflix, Inc.,* 2:16-cv-633

(xvii) *GEMSA v. AdRoll, Inc.,* 2:16-cv-634

(xviii) *GEMSA v. Spotify USA, Inc.,* 2:16-cv-635

(xix) *GEMSA v. Hitachi America, Ltd.,* 2:16-cv-636

(xx) *GEMSA v. Zillow, Inc.,* 2:16-cv-637

**(4) Fourth,** on **July 27, 2016**, GEMSA filed *GEMSA v. Amazon.com, Inc. et al,* 2:16-cv-823. It is to be noted that GEMSA named in their complaint, and filed suit against, three parties: (i) Amazon.com, Inc., (ii) Amazon Web Services, Inc., and (iii) Vadata, Inc. On **July 28, 2016,** GEMSA filed a Notice of Voluntary Dismissal (Dkt. No. 4 in 2:16-cv-823) voluntarily dismissing, without prejudice, Amazon Web Services, Inc. and Vadata, Inc., still leaving Amazon.com Inc. in the case of 2:16-cv-823. GEMSA's voluntary dismissal as to Amazon Web Services, Inc. and Vadata, Inc. was granted on August 1, 2016 (Dkt. No. 5 in 2:16-cv-823) by the Court.

**(5) Fifth,** on **October 4, 2016** GEMSA filed the case of *GEMSA v. Alibaba Group Holding, Ltd. et al,* 2:16-cv-1074.

On **October 6, 2016**, eleven (11) of the above lawsuits, specifically the cases of 2:16-cv-618, -619, -620, -621, -622, -623, -624, -625, -626, -627, -628, -629, -630, -631, -632, -633, -634, -635, -636, -637, and -823 became consolidated under the lead case of 2:16-cv-618. (*See* Dkt. No. 24 of 2:16-cv-618). On **December 21, 2016**, the case of 2:16-cv-1074 became consolidated under lead case 2:16-cv-618. (Dkt. No. 16 in 2:16-cv-1074).

### B.    Amazon's Involvement

In all of these 34 currently pending lawsuits except for three,[1] GEMSA alleges that various Defendants who Amazon asserts are customers of theirs which use their technology, e.g. Amazon Web Services (AWS), infringe the claims of two asserted patents that GEMSA owns: U.S. patent No. 6,690,400 ("the '400 patent") and U.S. Patent No. 7,356,677 ("the '677 patent"). *Id.*

On **July 22, 2016** (before the filing of *GEMSA v. Amazon.com, Inc. et al,* 2:16-cv-823 on **July 27, 2016** as noted above in Part(I)(A)(4)), Amazon filed a declaratory judgment action in the U.S. District Court for the Eastern District of Virginia against GEMSA seeking a declaration of

---

[1] The cases that do not accuse Amazon technology: (i) *GEMSA v. Alibaba.com Inc., et al,* 2:15-cv-1702, (ii) *GEMSA v. eBay, Inc.,* 2:16-cv-98 & (iii) *GEMSA v. PriceLine Group, Inc., Booking.com,* 2:15-cv-1703. (Dkt. No. 13 at 8).

non-infringement and invalidity of the '400 and '677 patents. (Dkt. No. 10 at 1, 3 and 7; Dkt. No. 10-9, Ex. H: The Complaint of E.D. Va. Case No. 3:16-cv-619, Dkt. No. 1).

Because GEMSA is an Australian company with no U.S. presence (Dkt. No. 10 at 1), and has not designated a representative in the United States for service of process affecting its patent rights (*Id.* at 7), Amazon filed its declaratory judgment suit in the Eastern District of Virginia under 35 U.S.C. § 293, which provides, in pertinent part:

> "Every patentee **not residing in the United States** may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder. If the person designated cannot be found at the address given in the last designation, or if *no person has been designated*, the **United States District Court for the Eastern District of Virginia shall have jurisdiction** and summons shall be served by publication or otherwise as the court directs."

35 U.S.C. § 293 (Emphasis added). *Id.* at 1, 7. Amazon also contends that "Amazon maintains offices and data centers that provide and support the accused technology" in the Eastern District of Virginia. *Id.* at 1.

On **July 27, 2016** (Part I(A)(4) above), GEMSA filed a lawsuit in this district against Amazon.com, Inc., AWS, Inc. and VADATA, Inc. alleging infringement of the '400 and '677 patents (*GEMSA v. Amazon.com, Inc. et al,* 2:16-cv-823). *Id.* at 8. Also on July 27, 2016, GEMSA amended its complaints in 20 of its previously filed customer cases (*See e.g.,* 2:16-cv-618, Dkt. No. 8) in order to add AWS, Inc. and VADATA, Inc. as defendants in each of those 20 cases.[2]

---

[2] Amazon contends that GEMSA's July 28, 2016 voluntary dismissal of AWS and VADATA in Dkt. No. 4 (granted in Dkt. No. 5) of 2:16-cv-823, but still keeping Amazon.com still in the case (See PartI(A)(4)) was likely an effort to "circumvent the first-to-file rule, as AWS and VADATA (not their parent company, Amazon.com, Inc.) are the plaintiffs in the first-filed declaratory judgment action pending in Virginia. But Amazon's first-filed declaratory judgment action takes precedence over GEMSA's second-filed action regardless of whether the parties to the two cases are the same, as the two cases involve the same core issues – purported infringement by Amazon's technology and invalidity of the GEMSA Patents…GEMSA's procedural stunt has no effect on the first-to-file analysis.")

In its pending 31 lawsuits alleging infringement by Amazon's customer Defendants, GEMSA alleges that each customer Defendant through its website "or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS')." *Id.* at 3.

### 1. GEMSA's Infringement Contentions

According to GEMSA, the Amazon customer Defendants infringe because their websites "access[ed] websites, data, data centers and the like owned or controlled by Amazon." *Id.* at 4. The complaints in these Amazon customer suits also allege that each Amazon customer Defendant infringes the asserted '400 and '677 GEMSA patents by using a "GUI for the administration and management" of its website, and the "GUI" of these accused customer Defendant websites "interacts with AWS." *Id.* Amazon further contends that GEMSA's claim charts identify only functionality of Amazon's AWS, not individual features or technology provided by each of the customer Defendants, in their infringement contentions. *Id.*

### a. GEMSA's Claim Chart for the '400 patent

An introductory segment in GEMSA's infringement contentions claim chart for the '400 patent states that the GUI of the accused customer Defendant websites "connects to a virtualized operating systems [sic] and databases run hosted [sic] by Amazon as…shown in the following charts." *Id.* The claim chart then includes mapping of every limitation of the asserted claims to a screen shot from the AWS website, e.g. (1) GEMSA accuses "Amazon's main menu bar" in an AWS screenshot as infringing the limitation of a "main menu bar" recited by claim 1 of the '400 patent (*Id.* at 4-5); (2) GEMSA alleges that "Amazon's cabinet selection button bar" in an AWS screenshot infringes the limitation of "a cabinet selection button bar" as recited by claim 1 of the '400 patent (*Id.* at 5); and (3) GEMSA alleges that a screenshot from the AWS website infringes

each remaining limitation of claim 1 of the '400 patent, e.g., the limitation "a cabinet visible partition window" as recited by claim 1 of the '400 patent (*Id.* at 6).

### b. GEMSA's Claim Chart for the '677 patent

GEMSA's infringement contention claim chart for the '677 patent similarly maps claim limitations from the '677 patent to screenshots of the AWS website. For example, (1) GEMSA maps the limitation "means for selecting one of said virtual computer systems to become next operable before suspending a currently operational virtual computer system" to an AWS screenshot (*Id.*), and (2) GEMSA also states that each accused Defendant customer website "satisfies the recitation via: [Each Defendant's] Client APP in AWS (Me SOS) / Framework/AMI [Amazon Machine Image] then XEN handles ACPI [Advanced Configuration and Power Interface] calls from AMIs and HW level," which Amazon contends is "squarely directed" to their technology because the AMI or "Amazon Machine Image" is used to create an instance of a virtual machine on Amazon's "Elastic Compute Cloud" (EC2) web service, and "XEN" refers to the primary virtual machine hypervisor used by Amazon's EC2. *Id.* at 6-7. Therefore, Amazon contends that "GEMSA's complaints and its infringement contentions make clear that Amazon's technology – not the technology provided by, or specific to, any of the disparate Amazon customers it has sued – is the sole basis of GEMSA's infringement case" and that each of "these customers [ranging from Ticketleap.com, LLC, to Uber Technologies, Inc., to Ubisoft Studio Inc., to Netflix, Inc., Zillow, Inc., and Spotify USA Inc.] provide a wide variety of products and services, including music and video streaming, video gaming, travel services, financial services, and consumer health products, among others – none of which is accused of infringing the GEMSA Patents." *Id.* at 7.

## II.    SUMMARY OF ARGUMENTS

The contentions from the parties involving Amazon's Eastern District of Virginia ("EDVa") declaratory judgment ("DJ") action and GEMSA's Eastern District of Texas ("EDTx") patent suits will be addressed first before the Court performs its analysis of the case at hand.

### A.    Amazon's Initial Contentions

Amazon first argues that because their **July 22, 2016** EDVa DJ action was filed before GEMSA's **July 27, 2016** amendment adding AWS, Inc. and VADATA, Inc. (now under lead case 2:16-cv-618) and also GEMSA's **July 27, 2016** filing of new EDTx case 2:16-cv-823, Amazon's EDVa DJ action is effectively "filed first" under the first-to-file rule. (Dkt. No. 10 at 9-12).

Amazon then asserts that GEMSA's **July 27, 2016** complaint amendment to add AWS, Inc. and VADATA, Inc. are not considered first-filed because they do not "relate back" to the original complaints, which requires a "mistake concerning the proper party's identity" under Fed. R. Civ. P. 15(c)(1)(C)(ii) – something Amazon states GEMSA cannot possibly show here because their infringement contentions specifically accused Amazon's technology, therefore they made a "deliberate strategic choice" not to name Amazon as a Defendant in their originally filed complaints against Amazon's customer Defendants. (Dkt. No. 10 at 12-13).

Amazon further contends that the core issues in both the EDVa DJ action and the EDTx patent suits not only "substantially" overlap – they "completely" overlap (Dkt. No. 10 at 14), an assertion that GEMSA does not dispute (Dkt. No. 13 at 5; Dkt. No. 19 at 2).

Amazon additionally argues that because (1) Amazon is the real party-in-interest with respect to GEMSA's infringement allegations, (2) Amazon's filing of its EDVa DJ action was not anticipatory, (3) venue and jurisdiction are proper in the EDVa, and (4) there is no efficiency to be gained from consolidation with any other case in the EDTx, there is no reason for the Court to deviate from the first-to-file rule. (Dkt. No. 10 at 14-17).

Amazon finally asserts that Federal Circuit law – specifically *In re Google,* 588 F. App'x 988, 989 (Fed. Cir. 2014) and *In re Nintendo,* 756 F.3d 1363,1365 (Fed. Cir. 2014) as well as various district court cases listed at (Dkt. No. 10 at 20-21) – mandates that customer suits must be stayed in favor of suits against the real source of the accused technology. *Id.* at 17-20.

## B. GEMSA's Response

In response, GEMSA argues that because their 20 earlier-filed **June 14, 2016** EDTx lawsuits (Part(I)(A)(3)) preceded the **July 22, 2016** filing of Amazon's EDVa DJ action, the first-to-file rule favors their suits. (Dkt. No. 13 at 2-3, 5). GEMSA also argues that the first-filed rule does not require identity of parties; therefore, the fact that AWS, Inc. and VADATA, Inc. were not present in GEMSA's originally filed complaint does not change the first-filed analysis. *Id.* at 3.

GEMSA then asserts that Amazon has failed to establish that the customer suit exception properly applies here because their Defendant customers are not "mere resellers" as they allege is required by the customer suit exception. *Id.* at 5-7.

GEMSA further contends that the customer suit exception's guiding principles of efficiency and judicial economy comprising three factors[3] do not merit a transfer. *Id.* at 7-8.

GEMSA additionally argues that Amazon has not proven that a substantial controversy exists for their EDVa DJ action (*Id.* at 8-9), that Amazon has failed to prove that its customers agreed to be bound by infringement and validity decisions in the EDVa DJ action (*Id.* at 9-10), and that the equities of the customer suit doctrine do not support transfer to EDVa (*Id.* at 10-11).

---

[3] "[T]he following three factors are probative of whether or not it would be more efficient to proceed with the second-filed action before the first-filed action: (1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the consumers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Vantage Point Tech., Inc. v. Amazon.com, Inc.,* No. 2:13-cv-909-JRG, 2015 U.S. Dist. LEXIS 675, at *7. These factors are encompassed in the Court's overall first-to-file analysis. However, the Court weighs overall judicial efficiency more than these 3 "mere reseller" factors.

GEMSA next asserts that Amazon has not proven that the convenience factors under 28 U.S.C. § 1404(a) show EDVa is "clearly more convenient" than EDTx, namely that the relative ease of access to sources of proof actually weighs against transfer (e.g. Ericsson "regularly conducts business" in the EDTx, prior-art witnesses are located in Texas, and key patent prosecution documents are located in the Houston area) (*Id.* at 11-15). Also, GEMSA contends that many Texas witnesses GEMSA identified are subject to compulsory process in the EDTx but not EDVa (*Id.* at 15), the cost of attendance for willing witnesses weighs against transfer (*Id.* at 16), the motions to transfer venue to EDVa involve only some of the related actions, thus transferring would result in conflicting rulings (*Id.* at 16-17), Amazon has not shown that EDTx would be necessarily slower or that EDVa would be faster (Dkt. No. 17-18), the EDTx has a particular local interest in the outcome of the case (*Id.* at 18), the EDTx's familiarity with the governing law (patent law and also issues of Texas state law involving patents) weighs against transfer to EDVa (*Id.* at 18-19) and transfer could raise potential conflict of law issues (*Id.* at 20).

### C. Amazon's Reply

In reply, Amazon first argues that the case here is nearly indistinguishable from the facts of *In re Google,* 588 F. App'x at 990, which GEMSA ignores in their response. (Dkt. No. 17 at 1). Amazon then asserts that its EDVa DJ action is still first-filed under the first-to-file rule because the Federal Circuit (in e.g., *In re Google,* 588 F. App'x at 989) has held that first-filed customer suits (such as the EDTx Defendant customer suits filed by GEMSA) are not entitled to deference under the first-to-file rule. (Dkt. No. 17 at 1-2). Amazon next contends that GEMSA's reliance on the 60 year-old *Kerotest* case, 342 U.S. at 180, is misplaced because it involved only one customer case, where GEMSA has sued more than 30 customer defendants here. *Id.* at 2-3.

Amazon additionally argues that the EDVa is the proper venue for this lawsuit not only because of 35 U.S.C. § 293, which states that non-resident patentees such as GEMSA must be sued

in the EDVa, but also due to the convenience factors under 28 U.S.C. § 1404(a). *Id.* at 4. Namely, in terms of the 1404(a) convenience factors, none of the relevant parties have any connection to the EDTx and even Ericsson's presence in the EDTx is not relevant because under the *Google* case, only the location of evidence and witnesses pertaining to the true target of the infringement allegations (here, Amazon) matter. *Id.* at 4-5. Furthermore, GEMSA is an Australian company with no employees, operation or presence in Texas, and Amazon has strong connections to Virginia because it maintains offices and data centers there that provide and support the accused technology, and Amazon's offices and data centers in Virginia employ a large number of people, including employee witnesses who may have knowledge relevant to the issues in this case. *Id.* at 5. As a result, because the majority of relevant evidence in patent infringement cases usually comes from the accused infringer, the ease of accessing Amazon's sources of proof weighs in favor of transfer to EDVa. *Id.* Finally, Amazon states that several potentially important prior art witnesses are located on the east coast – including named inventors of prior art references cited on the face of the '677 and '400 patents and assignees of the patents, such as Lucent or IBM, are all located in New York, New Jersey and Illinois – making the EDVa more convenient overall. *Id.* at 5-6.

Amazon further asserts that this case falls squarely within the customer suit exception to the first-to-file rule because the Federal Circuit in the *Google* case rejected the "mere reseller" argument. *Id.* at 6. Amazon also argues that courts routinely stay cases brought against users of software pending resolution of claims between the patentee and the producer of the software, even where the end users are not "resellers" or have to take some action as part of the alleged infringement. *Id.* at 7. In addition, Amazon contends that the very point of their EDVa DJ action is to avoid duplicative action and GEMSA's argument that "litigating more than 30 cases in this district could somehow be more efficient than litigating a single case in Virginia" makes no sense.

*Id.* at 8. Amazon further notes that it has over a million customers of its web services, of which GEMSA has chosen to sue just a few dozen; therefore, resolution of a single EDVa DJ action will moot litigation not only for the over 30 pending customer suits but also potentially hundreds if not thousands of future suits against Amazon customers. *Id.* at 9.

Amazon states that GEMSA identified only three of its more than 30 customer cases that involve anything other than Amazon technology (e.g. the actions against Alibaba, 2:15-cv-1702; E-Bay, 2:16-cv-98; and Booking.com, 2:15-cv-1703) – which Amazon argues is not a reason to have over 30 trials in the EDTx, particularly when Amazon's single EDVa DJ action will resolve all the issues in all the pending customer cases. *Id.* Amazon also points out that GEMSA's assertion that Amazon should have intervened in over 30 different lawsuits than filing a single DJ action is the "antithesis of efficiency" and staying the claims against Amazon's numerous customer defendants while EDVa resolves a single DJ action is the most efficient approach. *Id.* at 9-10.

Finally, Amazon asserts that "[i]f Amazon wins a judgment of non-infringement in the Virginia [DJ] action, GEMSA cannot prove infringement by Amazon customers. And if Amazon succeeds on its invalidity claims, GEMSA will have no patents to assert in the customer cases. If, on the other hand, GEMSA prevails on its anticipated infringement counterclaims, it will win a damages award from Amazon and would be unable to recover in any subsequent action against Amazon's customers based solely on their use of Amazon's technology—which is what GEMSA alleges in this district…Thus, whether Amazon's customers agree to be bound or not, GEMSA's customer claims will be resolved once Amazon's [EDVa DJ] action is resolved. GEMSA's customer claims should be stayed."

### D.    GEMSA's Sur-Reply

In sur-reply, GEMSA mainly repeats the same arguments it made before in its response, however more briefly. Specifically, GEMSA asserts that their EDTx suits conform to the first-

filed rule (*Id.* at 1-2), the customer suit exception does not apply to Amazon here, at least because the customer Defendants are not "merely resellers" and the principles of efficiency and economy would not be served by transfer (*Id.* at 2-3), that Amazon has not proven a proper DJ action in failing to prove that a substantial controversy exists for a DJ action,[4] plus failing to prove that its customers have agreed to be bound by infringement and validity decisions in the DJ action, and the equities and the 1404(a) convenience factors do not warrant transfer to EDVa (*Id.* at 3-5).

## III.    APPLICABLE LAW

"The Supreme Court has repeatedly observed that under the doctrine of comity, when cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation," a practice that "reflects an elementary principle of 'wise judicial administration.'" *In re Google Inc*., 588 F. App'x 988, 990 (Fed. Cir. 2014), *citing Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976); *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180 (1952).

### A.    First-to-File Rule

In maintaining the conservation of judicial resources, both the Federal Circuit and the Fifth Circuit have utilized the "first-to-file rule" which "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases" and where "the overlap is complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issues." *In re Telebrands Corporation,* 824 F.3d 982, 984 (Fed. Cir. 2016); *See Save Power Ltd. v. Syntek Fin. Corp.,* 121 F.3d 947, 950 (5th Cir. 1997); *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985). Therefore, as a doctrine

---

[4] The Court leaves it to the EDVa to decide whether or not the DJ action filed in EDVa Case No. 3:16-cv-619 was a proper one, and for purposes of this Order is only deciding the merits of Amazon's Motion to Stay (Dkt. No. 10) and Ericsson's Motion to Stay (Dkt. No. 16).

intended to avoid conflicting decisions and promote judicial efficiency, the first-to-file rule "generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1299 (Fed. Cir. 2012). The first-to-file rule should also not be applied rigidly. *See Kerotest,* 342 U.S. at 183 ("Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems."); *Elecs. for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed. Cir. 2005) (exceptions to the first-to-file rule may be made if justified by "considerations of judicial and litigant economy, and the just and effective disposition of disputes.") (internal quotations omitted).

"Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action, although there are exceptions and the rule is not rigidly or mechanically applied – 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1299 (Fed. Cir. 2012), *citing Kerotest*, 342 U.S. at 183–84; *See Futurewei Technologies, Inc. v. Acacia Research Corp.,* 737 F.3d 704, 708 (Fed. Cir. 2013) ("Application of the first-to-file rule is 'generally a matter for a district court's discretion, exercised within governing legal constraints.'); *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 139 (2005).

### B.    Customer Suit Exception

A customer suit exception exists to the first-to-file rule which provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *In re Dell Inc.,* 600 F. App'x 728, 730 (Fed. Cir. 2015), *citing Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990). The customer suit exception is also "based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Spread*

*Spectrum Screenings LLC v. Eastman Kodak Co.,* 657 F.3d 1349, 1357 (Fed. Cir. 2011), *citing*

*Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989)); *see also Katz,* 909 F.2d at

1464 (stating that "the manufacturer is the true defendant in the customer suit" and that it "must

protect its customers, either as a matter of contract, or good business, in order to avoid the

damaging impact of an adverse ruling against its products") (citation omitted). The "guiding

principles in the customer suit exception cases are efficiency and judicial economy." *Spectrum*

*Screenings,* 657 F.3d at 1357, *citing Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.,*

458 F.3d 1335, 1343 (Fed. Cir. 2006). "Generally speaking, courts apply the customer suit

exception to stay earlier-filed litigation against a customer while a later-filed case involving the

manufacturer proceeds in another forum." *Spectrum Screenings,* 657 F.3d at 1357.

## IV.     ANALYSIS

Applying the first-to-file rule, the Court finds that Amazon's EDVa DJ action (E.D. Va

Case No. 3:16-cv-619) was first filed. Thus, Amazon's EDVa DJ action shall proceed first while

21 GEMSA EDTx suits shall be STAYED, pending resolution of Amazon's EDVa DJ action.

### A.     The First-to-File Rule

Considering the balancing of equities and the degree of discretion afforded district courts

in applying the first-to-file rule, the Court finds that Amazon has sufficiently proven that its EDVa

DJ action was "first filed" on **July 22, 2016**, before GEMSA filed case 2:16-cv-823 against

Amazon.com, Inc., AWS, Inc. and VADATA, Inc. (later dismissing AWS, Inc. and VADATA,

Inc.) and amended its original **June 14, 2016** filed complaints on **July 27, 2016** to add AWS, Inc.

and VADATA, Inc. Although GEMSA argues that the first-to-file rule does not require identity of

parties, the Court finds that GEMSA's amended complaints are not first-filed because they do not

"relate back" to the originally filed **June 14, 2016** complaints, as Rule 15 of the Federal Rules of

Civil Procedure provides that an amendment to change the defendants only "relates back" to the

originally filed complaint when the parties to be brought in by the amendment (AWS, Inc. and VADATA, Inc.) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Due to GEMSA's originally filed complaint specifically accusing Amazon technology specifically belonging to AWS, Inc. and VADATA, Inc. (AWS screenshots, references to AMS, AMI, XEN, *see* Part I(B)(1)(b)), it is probable that GEMSA was not mistaken as to the identity of AWS, Inc., VADATA, Inc. or Amazon and their technology in amending its complaints.

### 1. Equitable Concerns Considered by the Federal Circuit

Furthermore, even though GEMSA's **June 14, 2016** EDTx patent lawsuits (*e.g.* 2:16-cv-618) were technically filed before Amazon's **July 27, 2016** EDVa DJ action, the Federal circuit has implied in the *Google* case – which bears similar facts to the case here – that first-filed customer suits are not to be given deference under the first-to-file rule, especially in light of more important equitable concerns. *See Google,* 588 F. App'x at 990, n. 2 ("[W]e [the Federal Circuit] are also unpersuaded by Respondents' argument that, despite not initially naming Google as a defendant, their actions are entitled to precedence under a first-filed designation since their complaints in Texas [patent infringement suits] were filed before the California action [a DJ action], because as the Supreme Court noted in rejecting a similar argument in *Kerotest Manufacturing,* "the equities of the situation do not depend on this argument.")(citation omitted).

### 2. *Kerotest*

GEMSA's reliance and citation of *Kerotest* is also not relevant, persuasive or on point here, and is distinguishable from the facts of the present case.[5] The main distinction between *Kerotest*

---

[5] In Kerotest, a patentee known as C-O-Two ("C") sued Acme Equipment Company ("A"), a single customer of Kerotest ("K"), in the Northern District of Illinois ("NDIll") for patent infringement. 342 U.S. at 181. Then, K filed a DJ action of non-infringement and invalidity of the asserted patents in the District of Delaware ("DDel"). *Id.* Afterwards, C then amended its complaint to add K to its lawsuit in the NDIll. *Id.* at 182. C filed a motion to stay the

and the case here is that the patentee in *Kerotest* sued only one customer defendant, making it simple, and not a major expenditure of judicial resources, to try the Chicago patent suit before the Delaware DJ action because it was only *one* customer defendant and only *one* other action. Here, there are more than 30 pending infringement patent cases in the EDTx to resolve versus a single DJ action in EDVa. Therefore, the issue of judicial efficiency immediately becomes apparent, especially when the Court is faced with the choice of handling either 30 or more patent suits or one DJ action, and is further told that there is a high possibility that those 30 or more patent suits can be resolved by the resolution of that one other DJ action. This was also the same reasoning espoused by the Federal Circuit in the *Google* case: that proceeding with a single DJ action was more efficient than trying five separate customer patent cases, especially if there was a chance that the one DJ action could resolve all five separate trials in one fell swoop. 558 F'Appx at 990.

**B.    35 U.S.C. § 293 & The 1404(a) Convenience Factors**

Regardless of the first-to-file analysis, venue is also proper in EDVa for two main reasons.

First, 35 U.S.C. § 293 states that "the United States District Court for the Eastern District of Virginia *shall have jurisdiction*" over non-resident patentees, and the parties do not dispute that GEMSA is an Australian company with a principal place of business located at 458 Morphett Road, Warradale, South Australia (Dkt. No. 8 at 1, ¶ 1), with no designated service representative in the U.S., and no employees or operations in Texas. (Dkt. No. 10 at 7; Dkt. No. 17 at 5).

Second, a court may consider venue considerations and depart from the usual first-to-file analysis in determining which case to first try when "judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Genentech, Inc. v. Eli Lilly & Co.,* 998

---

infringement action in NDIll until resolution of the DDel DJ action, but DDel denied C's motion to stay and entered an injunction enjoining C from pursuing its lawsuit in the NDIll. *Id.* The Third Circuit reversed DDel's denial of C's motion to stay, noting that the single customer of A could not be added as a party to K's DJ action, whereas all parties could resolve their claims once and for all in the NDIll. *Id.*

F.2d 931, 937 (Fed.Cir.1993). Specifically, a court can look to the "the convenience and availability of witnesses, [the] absence of jurisdiction over all necessary or desirable parties ... the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Futurewei,* 737 F.3d at 708, *citing Genentech, Inc. v. Eli Lilly & Co.,* 998 F. 2d at 938.

In other words, a court can consider the convenience factors under 28 U.S.C. § 1404(a) in determining which case to try first. Both Amazon and GEMSA do not appear to have any connections or ties to the EDTx. Even though GEMSA argues that Ericsson has a "presence" in the EDTx, the Federal Circuit has rejected contacts of a customer Defendant being adequate to establish venue over a key Defendant (such as Amazon) who provides technology to various Defendant customers. *Google,* 588 F. App'x at 990. Instead, more focus is given to the location of evidence and witnesses relevant to this key technology Defendant, here Amazon (and in the *Google* case was Google, who provided the Android source code for many customer defendants and who also designed, created and tested products in the Northern District of California, a clearly more convenient forum). *Id.* Furthermore, § 1404(a) serves to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Nintendo,* 756 F.3d at 1365-66, *citing* Katz, 909 F.2d at 1464.

Just as the Northern District of California was more convenient for Google because it was the location of witnesses and evidence relevant to the Android source code, the EDVa is where Amazon maintains offices, employees, and data centers that provide, support and create the accused technology. Potential employee witnesses who have relevant knowledge regarding the accused technology are also based in the EDVa. Therefore, the ease of access to evidence and witnesses from the primary accused infringer (here, Amazon) appear to weigh in favor of EDVa being the proper venue. Amazon has also shown that several potentially critical prior art witnesses

are located on the east coast, including inventors of patents cited on the faces of the '677 and '400 patents living in New York, New Jersey and Illinois, and assignees of the asserted patents such as Lucent and IBM also being based in New Jersey and New York.

### C. The Customer Suit Exception

As an analysis performed independently from the first-to-file rule, and irrespective of which suit was technically "filed first," the Court finds that under the customer suit exception, GEMSA's EDTX patent suits should be stayed while Amazon's EDVA DJ action should proceed.

Because the Federal Circuit has stated that the guiding principles in applying the customer suit exception are efficiency and judicial economy, there is overwhelming justification in staying the over 30 pending GEMSA EDTx patent suits in favor of allowing Amazon's EDVa DJ action to go forward, especially if there is a possibility or likelihood that all of GEMSA's pending patent cases can be resolved once Amazon's EDVa DJ action is resolved.

Furthermore, the Court finds unpersuasive GEMSA's argument that the customer suit exception does not apply because the Amazon customer Defendants are not "mere resellers" of Amazon technology. As the Federal Circuit ruled in the *Google* case (in response to a nearly identical argument raised by patentee Rockstar stating that Google's customer defendant Samsung was not a reseller of Google technology because Samsung manufactured the accused mobile device hardware while Google did not), a "flexible approach" should be applied, regardless of whether a customer Defendant is really a reseller of another Defendant's technology, which includes "staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." 588 Fed. App'x at 991. Therefore, in *Google*, the Federal Circuit reasoned that "staying proceedings in Texas [would] likely further these objectives [e.g., saving litigation resources, judicial efficiency] by mooting or at least advancing the 'major premises' being litigated in the Texas actions." *Id., quoting Katz,* 909 F.2d at 1464; *see also Nintendo,* 746 F.3d at 1365-66

19

(where the Federal Circuit stayed the retailer defendant suits because "the issues of infringement and validity [were] common to Nintendo and the Retailer Defendants").

The "customer-suit" exception also exists to avoid, if possible, "imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Id.* at 1365. Consequently, because the resolution of Amazon's EDVa DJ action will likely resolve the "major issues" in GEMSA's EDTx customer suits, and Amazon for all practical purposes can be considered the "true defendant" here, GEMSA's EDTx customer suits should be stayed as a matter of judicial efficiency and economy. After all, "the customer-suit exception...[is] designed to facilitate just, convenient, efficient, and less expensive determination." *Id. See* Fed.R.Civ.P. 1; *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

### D.     Motion to Stay

In considering a motion to stay, this Court considers: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Datatreasury Corp. v. Wells Fargo & Co.,* 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006) (citation omitted).

First, a stay will not unduly prejudice or present a clear tactical disadvantage to GEMSA because "major issues" relevant to their EDTx suits will be heard, namely patent validity and infringement issues pertaining to the '400 and '677 patents. Furthermore, if GEMSA prevails in the EDVa DJ action, they will still be able to pursue the customer patent suits in the EDTx. Second, a stay would also vastly simplify the issues in question and trial of the case, and resolution of the single EDVa DJ action could singlehandedly resolve the 30 or more pending EDTx patent suits. Third, at least in the cases consolidated under 2:16-v-618, a trial date has not been set and a Docket Control Order ("DCO") has not even been posted – although GEMSA has filed a proposed DCO

(Dkt. No. 92) suggesting that the close of fact discovery be January 29, 2018, more than a year from now. Therefore, a motion to stay GEMSA's 22 EDTx patent suits consolidated under 2:16-cv-618 pending resolution of Amazon's EDVa DJ action is warranted and should be granted.

## V.       CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Amazon's Motion (Dkt. No. 10) and Ericsson's Motion (Dkt. No. 16), as more specifically set out in the accompanying Order.

**SIGNED this 24th day of January, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE